**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LANDRI PASZOTTA,

        **Plaintiff,**

vs.                             **CASE NO.: 8:26-cv-1706**

OFFICER SCOTT PIERCE, JR.;
OFFICER RYAN LENAHAN;
OFFICER ARIC MARTINEAU; and
OFFICER RAMON ORTEGA;

        **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, LANDRI PASZOTTA, sues the Defendants, OFFICER SCOTT PIERCE, JR., OFFICER RYAN LENAHAN, OFFICER ARIC MARTINEAU and OFFICER RAMON ORTEGA and for her Complaint states:

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, particularly 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district because it is where the events complained of occurred.

4. This is an action for damages which exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

5. The incident which gives rise to this cause of action occurred within this jurisdiction

and within the applicable statute of limitations and this Honorable Court has jurisdiction.

## PARTIES

6.      Plaintiff, LANDRI PASZOTTA, is a resident of Hillsborough County, Florida and the United States of America.

7.      Defendant, OFFICER SCOTT PIERCE, JR., was at all times relevant to this Complaint duly appointed and acting as a police officer for the St. Petersburg Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the City of St. Petersburg. Defendant, OFFICER SCOTT PIERCE, JR., is sued in his individual capacity.

8.      Defendant, OFFICER RYAN LENAHAN, was at all times relevant to this Complaint duly appointed and acting as a police officer for the St. Petersburg Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the City of St. Petersburg. Defendant, OFFICER RYAN LENAHAN, is sued in his individual capacity.

9.      Defendant, OFFICER ARIC MARTINEAU, was at all times relevant to this Complaint duly appointed and acting as a police officer for the St. Petersburg Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the City of St. Petersburg. Defendant, OFFICER ARIC MARTINEAU, is sued in his individual capacity.

10.     Defendant, OFFICER RAMON ORTEGA, was at all times relevant to this Complaint duly appointed and acting as a police officer for the St. Petersburg Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the City of St. Petersburg. Defendant, OFFICER RAMON

ORTEGA, is sued in his individual capacity.

11.    Each and all of the acts of the Defendant, and other members of the St. Petersburg Police Department involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America, the State of Florida, and the City of St. Petersburg, under the color of law and by virtue of their authority as law enforcement officers for the City of St. Petersburg. At all times, Defendants were engaged in conduct that was the proximate cause of the violations of Plaintiff, LANDRI PASZOTTA'S, federally protected rights as more particularized herein.

## FACTS GIVING RISE TO THIS CAUSE OF ACTION

12.    On June 22, 2025, Officer Scott Pierce, Jr., conducted a traffic stop on Landri Paszotta for suspicion of DUI.

13.    Within the first minute and a half of interacting with Ms. Paszotta, he identified that she was not wearing pants.

14.    Officer Pierce made no attempt to request a female officer be present, despite being fully aware that Ms. Paszotta was not fully clothed.

15.    Ms. Paszotta remained polite and cooperative throughout her interaction with Officer Pierce.

16.    Roughly six minutes into the interaction, Officer Pierce asked Ms. Paszotta to get out of the vehicle.

17.    Ms. Paszotta gets out of the vehicle and her entire bottom half, including her genitals, are exposed.

18.    Officer Pierce asks her if she had shorts in her car, to which she replied that she did, but Officer Pierce did not make any attempt to obtain them himself and never verbally instructed Ms. Paszotta to get her clothes and put them on herself.

19.    Instead, Officer Pierce indicated that he believed Ms. Paszotta was impaired and proceeded with his DUI investigation on the side of the busy road, in the open, with countless vehicles driving past.

20.    Backup male officers including Officer Ryan Lenahan, Officer Aric Martineau and Officer Ramon Ortega arrived and stood around the area observing the field sobriety exercises without a single one offering something to Ms. Paszotta to clothe herself.

21.    Officer Pierce began the DUI testing by conducting an evaluation for Horizontal Gaze Nystagmus. During this evaluation, Ms. Paszotta advised that she had just been with her friend and two males at the beach. She then became emotional describing her evening, starting to cry, and advising law enforcement that the two men were wanting to have sex with her and she didn't want to. Ms. Paszotta's crying and emotions escalated as she explained that she was just attempting to get away and go home. Based on the situation she was describing, her driving was warranted out of necessity to escape this terrible situation.

22.    Despite her emotional state, Officer Pierce with the assistance of Officer Lenahan persisted with field sobriety exercises, conducting a Walk and Turn, and One Leg Stand examination, with Ms. Paszotta's genitals exposed. She was positioned in front of the bright highlights of the law enforcement truck, and visible for every vehicle that passed by.

23.    After completing the field sobriety exercises, Officer Pierce and Officer Lenahan placed Ms. Paszotta in handcuffs and walked her back to Officer Martineau's vehicle for transport.

Prior to being placed in the police cruiser, Ms. Paszotta again advised she had clothes in her vehicle. Again, no attempts were made to clothe her.

24.    There were three or four male officers present while Ms. Paszotta was in this exposed state, and not a single one of them made any attempt to clothe her or obtain a female backup officer.

25.    Further, upon searching her vehicle for towing, the Officers found her underwear, as well as numerous articles of clothing, throwing them around and providing commentary, but made no effort to allow Ms. Paszotta to clothe herself.

26.    Officer Martineau obtained a pair of jeans from the back of her vehicle, but decided to leave her undressed and transported her with her bottom half naked to the jail.

27.    Once inside the vehicle, Ms. Paszotta's already anxious and emotional state quickly escalated. She began sobbing profusely, shaking, and hyperventilating. She asked law enforcement officers to allow her to put her hands in front of her, hysteric and informing them that she has PTSD and had been raped and assaulted. She advised she could not be restrained like this and started vomiting from her panic attack. No efforts were made to take her for medical attention or to help alleviate her concerns.

28.    Ms. Paszotta did not have any prior convictions and was cooperative during the stop and subsequent investigation. The exposure of her private area to the public during the investigation and detention was unnecessary, unjustified, and constituted a gross violation of her constitutional and statutory rights.

29.    Since her incarceration, Ms. Paszotta has experienced ongoing panic attacks and difficulty sleeping, further exacerbating her pre-existing PTSD and mental health conditions.

**COUNT I**
**42 U.S. 1983 – UNREASONABLE SEARCH AND SEIZURE**
**OFFICER PIERCE, JR.**

30.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 29 above, and further alleges:

31.    The actions of Defendant, Officer Pierce, Jr., acting under color of state law, deprived Plaintiff of her rights secured by the Fourth Amendment to be free from unreasonable seizures and unreasonable intrusion upon her bodily privacy and dignity.

32.    Defendant's conduct, including forcing Plaintiff to remain nude in public view, continuing investigatory procedures despite her vulnerability, and transporting her unclothed, constituted an unreasonable and excessive intrusion unrelated to any legitimate law enforcement purpose.

33.    No exigent circumstances justified the exposure of Plaintiff's body or the refusal to provide her with clothing or privacy.

34.    The conduct was objectively unreasonable.

35.    As a direct and proximate result, Plaintiff suffered severe emotional and psychological harm, humiliation, and mental anguish, as well as an exacerbation of preexisting mental health conditions.

36.    As a direct and proximate result of Defendant's actions, Plaintiff suffered deprivation of her rights under the Fourth Amendment, including loss of dignity, privacy, and bodily integrity.

## COUNT II
## 42 U.S. 1983 – UNREASONABLE SEARCH AND SEIZURE
## OFFICER LENAHAN

37.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 29 above, and further alleges:

38.     The actions of Defendant, Officer Lenahan, acting under color of state law, deprived Plaintiff of her rights secured by the Fourth Amendment to be free from unreasonable seizures and unreasonable intrusion upon her bodily privacy and dignity.

39.     Defendant's conduct, including forcing Plaintiff to remain nude in public view, continuing investigatory procedures despite her vulnerability, and transporting her unclothed, constituted an unreasonable and excessive intrusion unrelated to any legitimate law enforcement purpose.

40.     No exigent circumstances justified the exposure of Plaintiff's body or the refusal to provide her with clothing or privacy.

41.     The conduct was objectively unreasonable.

42.     As a direct and proximate result, Plaintiff suffered severe emotional and psychological harm, humiliation, and mental anguish, as well as an exacerbation of preexisting mental health conditions.

43.     As a direct and proximate result of Defendant's actions, Plaintiff suffered deprivation of her rights under the Fourth Amendment, including loss of dignity, privacy, and bodily integrity.

## COUNT III
## 42 U.S. 1983 – UNREASONABLE SEARCH AND SEIZURE
## OFFICER MARTINEAU

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 29 above, and further alleges:

45.     The actions of Defendant, Officer Martineau, acting under color of state law, deprived Plaintiff of her rights secured by the Fourth Amendment to be free from unreasonable seizures and unreasonable intrusion upon her bodily privacy and dignity.

46.     Defendant's conduct, including forcing Plaintiff to remain nude in public view, continuing investigatory procedures despite her vulnerability, and transporting her unclothed, constituted an unreasonable and excessive intrusion unrelated to any legitimate law enforcement purpose.

47.     No exigent circumstances justified the exposure of Plaintiff's body or the refusal to provide her with clothing or privacy.

48.     The conduct was objectively unreasonable.

49.     As a direct and proximate result, Plaintiff suffered severe emotional and psychological harm, humiliation, and mental anguish, as well as an exacerbation of preexisting mental health conditions.

50.     As a direct and proximate result of Defendant's actions, Plaintiff suffered deprivation of her rights under the Fourth Amendment, including loss of dignity, privacy, and bodily integrity.

## COUNT IV
## 42 U.S. 1983 – UNREASONABLE SEARCH AND SEIZURE
## OFFICER ORTEGA

51.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1- 29 above, and further alleges:

52.    The actions of Defendant, Officer Ortega, acting under color of state law, deprived Plaintiff of her rights secured by the Fourth Amendment to be free from unreasonable seizures and unreasonable intrusion upon her bodily privacy and dignity.

53.    Defendant's conduct, including forcing Plaintiff to remain nude in public view, continuing investigatory procedures despite her vulnerability, and transporting her unclothed, constituted an unreasonable and excessive intrusion unrelated to any legitimate law enforcement purpose.

54.    No exigent circumstances justified the exposure of Plaintiff's body or the refusal to provide her with clothing or privacy.

55.    The conduct was objectively unreasonable.

56.    As a direct and proximate result, Plaintiff suffered severe emotional and psychological harm, humiliation, and mental anguish, as well as an exacerbation of preexisting mental health conditions.

57.    As a direct and proximate result of Defendant's actions, Plaintiff suffered deprivation of her rights under the Fourth Amendment, including loss of dignity, privacy, and bodily integrity.

**COUNT V**
**42 U.S. 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS**
**VIOLATION OF BODILY INTEGRITY AND DIGNITY**
**OFFICER PIERCE, JR.**

58.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above, and further alleges:

59.     The Fourteenth Amendment to the United States Constitution protects individuals from state action that deprives them of liberty without due process of law. This liberty interest encompasses the right to bodily integrity, personal dignity, and freedom from government conduct that is so arbitrary, conscience-shocking, and fundamentally offensive as to violate the ordered concept of liberty.

60.     At all times material hereto, Defendant Officer Pierce, Jr., was acting under color of state law as duly appointed officers of the St. Petersburg Police Department.

61.     Ms. Paszotta possessed a clearly established liberty interest in her bodily integrity and personal dignity, including the right to be free from state-compelled public exposure of her genitalia during a law enforcement encounter.

62.     The Defendant's conduct shocks the conscience. Specifically:

   a.     Officer Pierce, Jr., was aware within the first minute and a half of the encounter that Ms. Paszotta was not wearing pants, yet he ordered her to exit her vehicle without making any effort to allow her to clothe herself, resulting in the complete exposure of her genitalia on a busy public roadway;

   b.     Officer Pierce, Jr., was informed that shorts were available in Ms. Paszotta's vehicle, yet made no effort to retrieve them or to instruct Ms. Paszotta to do so;

c.   Officers Lenahan, Martineau, and Ortega each arrived on scene, observed Ms. Paszotta's exposed and vulnerable state, and not one of them made any attempt to provide her with clothing, a covering, or any measure of privacy;

d.   Officer Pierce, Jr., and Officer Lenahan compelled Ms. Paszotta to perform field sobriety exercises, including a Walk and Turn and One Leg Stand, while her genitalia remained fully exposed to passing traffic on a public roadway, with her body illuminated by the bright lights of a law enforcement vehicle;

e.   During the encounter, Ms. Paszotta disclosed to officers that she had fled a situation in which two men had pressured her for sex without her consent, and that she had been previously raped and assaulted, suffering from diagnosed PTSD, disclosures that were wholly disregarded;

f.   Officer Martineau located a pair of jeans from Ms. Paszotta's vehicle during the inventory search but made the deliberate decision to leave her unclothed, transporting her to jail with her lower body exposed;

g.   While searching her vehicle, officers located and handled Ms. Paszotta's underwear and other articles of clothing, making commentary, yet deliberately declined to afford her the opportunity to dress herself; and

h.   Throughout her transport, Ms. Paszotta experienced a severe panic attack, sobbing, hyperventilating, shaking, and vomiting, while advising officers of her PTSD and prior trauma, yet no officer sought medical attention or took any step to alleviate her condition.

63.    The totality of the foregoing conduct was not incidental, inadvertent, or the product of reasonable law enforcement necessity. It was deliberate, sustained, and conscience-shocking in its indifference to Ms. Paszotta's fundamental human dignity.

64.    No legitimate law enforcement purpose required that Ms. Paszotta perform field sobriety exercises, be detained roadside, or be transported to jail with her genitalia exposed. Clothing was available, accessible, and known to be so by all Defendants. The decision to leave her unclothed was arbitrary and served no penological or investigatory objective.

65.    The Defendant's conduct was not a reasonable response to an emergency or exigent circumstance, but rather a deliberate exercise of authority that was grossly disproportionate to any legitimate governmental interest and that exploited Ms. Paszotta's vulnerability in a manner that no reasonable officer could have believed was constitutionally permissible.

66.    At the time of the incident, the constitutional right to be free from state-compelled public nudity and the deliberate disregard of a detainee's bodily integrity during a non-emergency law enforcement encounter was clearly established, such that any reasonable officer in Defendant's position would have understood that their conduct violated the Constitution.

67.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe and ongoing emotional and psychological harm, including acute panic attacks, insomnia, humiliation, loss of dignity, and a significant exacerbation of her pre-existing PTSD and related mental health conditions.

68.    Plaintiff has incurred and will continue to incur mental health expenses, emotional suffering, and loss of enjoyment of life as a result of the violations described herein.

**COUNT VI**
**42 U.S. 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS**
**VIOLATION OF BODILY INTEGRITY AND DIGNITY**
**OFFICER LENAHAN**

69.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above, and further alleges:

70.     The Fourteenth Amendment to the United States Constitution protects individuals from state action that deprives them of liberty without due process of law. This liberty interest encompasses the right to bodily integrity, personal dignity, and freedom from government conduct that is so arbitrary, conscience-shocking, and fundamentally offensive as to violate the ordered concept of liberty.

71.     At all times material hereto, Defendant Officer Lenahan, was acting under color of state law as duly appointed officers of the St. Petersburg Police Department.

72.     Ms. Paszotta possessed a clearly established liberty interest in her bodily integrity and personal dignity, including the right to be free from state-compelled public exposure of her genitalia during a law enforcement encounter.

73.     The Defendant's conduct shocks the conscience. Specifically:

a.  Officer Pierce, Jr., was aware within the first minute and a half of the encounter that Ms. Paszotta was not wearing pants, yet he ordered her to exit her vehicle without making any effort to allow her to clothe herself, resulting in the complete exposure of her genitalia on a busy public roadway;

b.  Officer Pierce, Jr., was informed that shorts were available in Ms. Paszotta's vehicle, yet made no effort to retrieve them or to instruct Ms. Paszotta to do so;

c.  Officers Lenahan, Martineau, and Ortega each arrived on scene, observed Ms. Paszotta's exposed and vulnerable state, and not one of them made any attempt to provide her with clothing, a covering, or any measure of privacy;

d.  Officer Pierce, Jr., and Officer Lenahan compelled Ms. Paszotta to perform field sobriety exercises, including a Walk and Turn and One Leg Stand, while her genitalia remained fully exposed to passing traffic on a public roadway, with her body illuminated by the bright lights of a law enforcement vehicle;

e.  During the encounter, Ms. Paszotta disclosed to officers that she had fled a situation in which two men had pressured her for sex without her consent, and that she had been previously raped and assaulted, suffering from diagnosed PTSD, disclosures that were wholly disregarded;

f.  Officer Martineau located a pair of jeans from Ms. Paszotta's vehicle during the inventory search but made the deliberate decision to leave her unclothed, transporting her to jail with her lower body exposed;

g.  While searching her vehicle, officers located and handled Ms. Paszotta's underwear and other articles of clothing, making commentary, yet deliberately declined to afford her the opportunity to dress herself; and

h.  Throughout her transport, Ms. Paszotta experienced a severe panic attack, sobbing, hyperventilating, shaking, and vomiting, while advising officers of her PTSD and prior trauma, yet no officer sought medical attention or took any step to alleviate her condition.

74.     The totality of the foregoing conduct was not incidental, inadvertent, or the product of reasonable law enforcement necessity. It was deliberate, sustained, and conscience-shocking in its indifference to Ms. Paszotta's fundamental human dignity.

75.     No legitimate law enforcement purpose required that Ms. Paszotta perform field sobriety exercises, be detained roadside, or be transported to jail with her genitalia exposed. Clothing was available, accessible, and known to be so by all Defendants. The decision to leave her unclothed was arbitrary and served no penological or investigatory objective.

76.     The Defendant's conduct was not a reasonable response to an emergency or exigent circumstance, but rather a deliberate exercise of authority that was grossly disproportionate to any legitimate governmental interest and that exploited Ms. Paszotta's vulnerability in a manner that no reasonable officer could have believed was constitutionally permissible.

77.     At the time of the incident, the constitutional right to be free from state-compelled public nudity and the deliberate disregard of a detainee's bodily integrity during a non-emergency law enforcement encounter was clearly established, such that any reasonable officer in Defendant's position would have understood that their conduct violated the Constitution.

78.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe and ongoing emotional and psychological harm, including acute panic attacks, insomnia, humiliation, loss of dignity, and a significant exacerbation of her pre-existing PTSD and related mental health conditions.

79.     Plaintiff has incurred and will continue to incur mental health expenses, emotional suffering, and loss of enjoyment of life as a result of the violations described herein.

<u>**COUNT VII**</u>
<u>**42 U.S. 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS**</u>
<u>**VIOLATION OF BODILY INTEGRITY AND DIGNITY**</u>
<u>**OFFICER MARTINUEA**</u>

80.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above, and further alleges:

81.    The Fourteenth Amendment to the United States Constitution protects individuals from state action that deprives them of liberty without due process of law. This liberty interest encompasses the right to bodily integrity, personal dignity, and freedom from government conduct that is so arbitrary, conscience-shocking, and fundamentally offensive as to violate the ordered concept of liberty.

82.    At all times material hereto, Defendant Officer Martineau, was acting under color of state law as duly appointed officers of the St. Petersburg Police Department.

83.    Ms. Paszotta possessed a clearly established liberty interest in her bodily integrity and personal dignity, including the right to be free from state-compelled public exposure of her genitalia during a law enforcement encounter.

84.    The Defendant's conduct shocks the conscience. Specifically:

   a.    Officer Pierce, Jr., was aware within the first minute and a half of the encounter that Ms. Paszotta was not wearing pants, yet he ordered her to exit her vehicle without making any effort to allow her to clothe herself, resulting in the complete exposure of her genitalia on a busy public roadway;

   b.    Officer Pierce, Jr., was informed that shorts were available in Ms. Paszotta's vehicle, yet made no effort to retrieve them or to instruct Ms. Paszotta to do so;

c.  Officers Lenahan, Martineau, and Ortega each arrived on scene, observed Ms. Paszotta's exposed and vulnerable state, and not one of them made any attempt to provide her with clothing, a covering, or any measure of privacy;

d.  Officer Pierce, Jr., and Officer Lenahan compelled Ms. Paszotta to perform field sobriety exercises, including a Walk and Turn and One Leg Stand, while her genitalia remained fully exposed to passing traffic on a public roadway, with her body illuminated by the bright lights of a law enforcement vehicle;

e.  During the encounter, Ms. Paszotta disclosed to officers that she had fled a situation in which two men had pressured her for sex without her consent, and that she had been previously raped and assaulted, suffering from diagnosed PTSD, disclosures that were wholly disregarded;

f.  Officer Martineau located a pair of jeans from Ms. Paszotta's vehicle during the inventory search but made the deliberate decision to leave her unclothed, transporting her to jail with her lower body exposed;

g.  While searching her vehicle, officers located and handled Ms. Paszotta's underwear and other articles of clothing, making commentary, yet deliberately declined to afford her the opportunity to dress herself; and

h.  Throughout her transport, Ms. Paszotta experienced a severe panic attack, sobbing, hyperventilating, shaking, and vomiting, while advising officers of her PTSD and prior trauma, yet no officer sought medical attention or took any step to alleviate her condition.

85.     The totality of the foregoing conduct was not incidental, inadvertent, or the product of reasonable law enforcement necessity. It was deliberate, sustained, and conscience-shocking in its indifference to Ms. Paszotta's fundamental human dignity.

86.     No legitimate law enforcement purpose required that Ms. Paszotta perform field sobriety exercises, be detained roadside, or be transported to jail with her genitalia exposed. Clothing was available, accessible, and known to be so by all Defendants. The decision to leave her unclothed was arbitrary and served no penological or investigatory objective.

87.     The Defendant's conduct was not a reasonable response to an emergency or exigent circumstance, but rather a deliberate exercise of authority that was grossly disproportionate to any legitimate governmental interest and that exploited Ms. Paszotta's vulnerability in a manner that no reasonable officer could have believed was constitutionally permissible.

88.     At the time of the incident, the constitutional right to be free from state-compelled public nudity and the deliberate disregard of a detainee's bodily integrity during a non-emergency law enforcement encounter was clearly established, such that any reasonable officer in Defendant's position would have understood that their conduct violated the Constitution.

89.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe and ongoing emotional and psychological harm, including acute panic attacks, insomnia, humiliation, loss of dignity, and a significant exacerbation of her pre-existing PTSD and related mental health conditions.

90.     Plaintiff has incurred and will continue to incur mental health expenses, emotional suffering, and loss of enjoyment of life as a result of the violations described herein.

## COUNT VIII
## 42 U.S. 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATION OF BODILY INTEGRITY AND DIGNITY
## OFFICER ORTEGA

91.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above, and further alleges:

92.    The Fourteenth Amendment to the United States Constitution protects individuals from state action that deprives them of liberty without due process of law. This liberty interest encompasses the right to bodily integrity, personal dignity, and freedom from government conduct that is so arbitrary, conscience-shocking, and fundamentally offensive as to violate the ordered concept of liberty.

93.    At all times material hereto, Defendant Officer Ortega, was acting under color of state law as duly appointed officers of the St. Petersburg Police Department.

94.    Ms. Paszotta possessed a clearly established liberty interest in her bodily integrity and personal dignity, including the right to be free from state-compelled public exposure of her genitalia during a law enforcement encounter.

95.    The Defendant's conduct shocks the conscience. Specifically:

a.    Officer Pierce, Jr., was aware within the first minute and a half of the encounter that Ms. Paszotta was not wearing pants, yet he ordered her to exit her vehicle without making any effort to allow her to clothe herself, resulting in the complete exposure of her genitalia on a busy public roadway;

b.    Officer Pierce, Jr., was informed that shorts were available in Ms. Paszotta's vehicle, yet made no effort to retrieve them or to instruct Ms. Paszotta to do so;

c.   Officers Lenahan, Martineau, and Ortega each arrived on scene, observed Ms. Paszotta's exposed and vulnerable state, and not one of them made any attempt to provide her with clothing, a covering, or any measure of privacy;

d.   Officer Pierce, Jr., and Officer Lenahan compelled Ms. Paszotta to perform field sobriety exercises, including a Walk and Turn and One Leg Stand, while her genitalia remained fully exposed to passing traffic on a public roadway, with her body illuminated by the bright lights of a law enforcement vehicle;

e.   During the encounter, Ms. Paszotta disclosed to officers that she had fled a situation in which two men had pressured her for sex without her consent, and that she had been previously raped and assaulted, suffering from diagnosed PTSD, disclosures that were wholly disregarded;

f.   Officer Martineau located a pair of jeans from Ms. Paszotta's vehicle during the inventory search but made the deliberate decision to leave her unclothed, transporting her to jail with her lower body exposed;

g.   While searching her vehicle, officers located and handled Ms. Paszotta's underwear and other articles of clothing, making commentary, yet deliberately declined to afford her the opportunity to dress herself; and

h.   Throughout her transport, Ms. Paszotta experienced a severe panic attack, sobbing, hyperventilating, shaking, and vomiting, while advising officers of her PTSD and prior trauma, yet no officer sought medical attention or took any step to alleviate her condition.

96.     The totality of the foregoing conduct was not incidental, inadvertent, or the product of reasonable law enforcement necessity. It was deliberate, sustained, and conscience-shocking in its indifference to Ms. Paszotta's fundamental human dignity.

97.     No legitimate law enforcement purpose required that Ms. Paszotta perform field sobriety exercises, be detained roadside, or be transported to jail with her genitalia exposed. Clothing was available, accessible, and known to be so by all Defendants. The decision to leave her unclothed was arbitrary and served no penological or investigatory objective.

98.     The Defendant's conduct was not a reasonable response to an emergency or exigent circumstance, but rather a deliberate exercise of authority that was grossly disproportionate to any legitimate governmental interest and that exploited Ms. Paszotta's vulnerability in a manner that no reasonable officer could have believed was constitutionally permissible.

99.     At the time of the incident, the constitutional right to be free from state-compelled public nudity and the deliberate disregard of a detainee's bodily integrity during a non-emergency law enforcement encounter was clearly established, such that any reasonable officer in Defendant's position would have understood that their conduct violated the Constitution.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe and ongoing emotional and psychological harm, including acute panic attacks, insomnia, humiliation, loss of dignity, and a significant exacerbation of her pre-existing PTSD and related mental health conditions.

101.    Plaintiff has incurred and will continue to incur mental health expenses, emotional suffering, and loss of enjoyment of life as a result of the violations described herein.

**STATE LAW CLAIMS**

**COUNT IX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**OFFICER PIERCE, JR.**

102.    Plaintiff realleges and incorporates by reference paragraphs 1 - 29 as if fully set forth herein.

103.    At all times material, Defendant, Officer Pierce, Jr., was acting within the course and scope of his employment as a law-enforcement officer of the State of Florida and under color of state law.

104.    Defendant's actions were intentional, malicious, and performed with reckless disregard for Plaintiff's emotional well-being. He knew that forcing Ms. Paszotta to remain unclothed and publicly exposed during a roadside investigation would foreseeably cause her extreme distress.

105.    Defendant's conduct was so outrageous in character, and so extreme in degree, that it exceeds all possible bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized society.

106.    Defendant acted with actual malice and deliberate indifference to Plaintiff's rights and emotional welfare, demonstrating a callous disregard for her human dignity.

107.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including panic attacks, hyperventilation, vomiting, humiliation, insomnia, and exacerbation of her diagnosed PTSD.

108.    Plaintiff has incurred and continues to incur mental-health expenses, emotional suffering, and loss of enjoyment of life.

109.    Plaintiff is entitled to recover compensatory and punitive damages under Florida law.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## OFFICER LENAHAN

110.    Plaintiff realleges and incorporates by reference paragraphs 1 - 29 as if fully set forth herein.

111.    At all times material, Defendant, Officer Lenahan, was acting within the course and scope of his employment as a law-enforcement officer of the State of Florida and under color of state law.

112.    Defendant's actions were intentional, malicious, and performed with reckless disregard for Plaintiff's emotional well-being. He knew that forcing Ms. Paszotta to remain unclothed and publicly exposed during a roadside investigation would foreseeably cause her extreme distress.

113.    Defendant's conduct was so outrageous in character, and so extreme in degree, that it exceeds all possible bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized society.

114.    Defendant acted with actual malice and deliberate indifference to Plaintiff's rights and emotional welfare, demonstrating a callous disregard for her human dignity.

115.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including panic attacks, hyperventilation, vomiting, humiliation, insomnia, and exacerbation of her diagnosed PTSD.

116.    Plaintiff has incurred and continues to incur mental-health expenses, emotional suffering, and loss of enjoyment of life.

117.   Plaintiff is entitled to recover compensatory and punitive damages under Florida law.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## OFFICER MARTINEAU

118.   Plaintiff realleges and incorporates by reference paragraphs 1 - 29 as if fully set forth herein.

119.   At all times material, Defendant, Officer Martineau, was acting within the course and scope of his employment as a law-enforcement officer of the State of Florida and under color of state law.

120.   Defendant's actions were intentional, malicious, and performed with reckless disregard for Plaintiff's emotional well-being. He knew that forcing Ms. Paszotta to remain unclothed and publicly exposed during a roadside investigation would foreseeably cause her extreme distress.

121.   Defendant's conduct was so outrageous in character, and so extreme in degree, that it exceeds all possible bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized society.

122.   Defendant acted with actual malice and deliberate indifference to Plaintiff's rights and emotional welfare, demonstrating a callous disregard for her human dignity.

123.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including panic attacks, hyperventilation, vomiting, humiliation, insomnia, and exacerbation of her diagnosed PTSD.

124.   Plaintiff has incurred and continues to incur mental-health expenses, emotional suffering, and loss of enjoyment of life.

125.    Plaintiff is entitled to recover compensatory and punitive damages under Florida law.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## OFFICER ORTEGA

126.    Plaintiff realleges and incorporates by reference paragraphs 1 - 29 as if fully set forth herein.

127.    At all times material, Defendant, Officer Ortega, was acting within the course and scope of his employment as a law-enforcement officer of the State of Florida and under color of state law.

128.    Defendant's actions were intentional, malicious, and performed with reckless disregard for Plaintiff's emotional well-being. He knew that forcing Ms. Paszotta to remain unclothed and publicly exposed during a roadside investigation would foreseeably cause her extreme distress.

129.    Defendant's conduct was so outrageous in character, and so extreme in degree, that it exceeds all possible bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized society.

130.    Defendant acted with actual malice and deliberate indifference to Plaintiff's rights and emotional welfare, demonstrating a callous disregard for her human dignity.

131.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including panic attacks, hyperventilation, vomiting, humiliation, insomnia, and exacerbation of her diagnosed PTSD.

132.    Plaintiff has incurred and continues to incur mental-health expenses, emotional suffering, and loss of enjoyment of life.

133.    Plaintiff is entitled to recover compensatory and punitive damages under Florida law.

## DAMAGES

134.    Plaintiff incorporates each and every previous allegation set forth in the general allegations as if fully set forth herein.

135.    As a direct and proximate result of the aforementioned actions and omissions of the Defendant, Plaintiff, LANDRI PASZOTTA'S, constitutional rights were violated, and she suffered injuries and damages.  Plaintiff seeks recovery from the Defendants of all damages to which she may be entitled under federal law for the injuries and damages Plaintiff sustained and which include, but are not limited to, the following:

    a.    Emotional Pain and Suffering of a past, present and future nature;

    b.    Mental Anguish of a past, present and future nature;

    c.    Humiliation;

    d.    Loss of Dignity;

    e.    Loss of Enjoyment of Life of a past, present and future nature;

    f.    Damage to Reputation;

    g.    Punitive damages;

    h.    Pre and Post-Judgment Interest for all 42 UCS § 1983 claims;

    i.    Statutory and Discretionary Costs;

    j.    Attorney's fees where permitted by 42 USC § 1988 or other statutes;

    k.    All such further relief, both general and specific, to which she may be entitled under the premises.

## REQUEST FOR JURY TRIAL

Plaintiff, LANDRI PASZOTTA, requests a trial by jury on all issues so triable.

| MICHAEL P. MADDUX, P.A. | SHRADER, MENDEZ & O'CONNELL |
|---|---|

*s/Jennifer M. Szymczak*
Jennifer M. Szymczak, Esquire
Florida Bar Number: 85487
Lead Trial Counsel for Plaintiff
Michael P. Maddux, Esquire
Florida Bar Number: 964212
Co-Counsel for Plaintiff
2102 West Cleveland Street
Tampa, Florida 33606
Telephone: (813) 253-3363
Facsimile: (813) 253-2553
E-Mail: jszymczak@madduxattorneys.com
    mmaddux@madduxattorneys.com
    ctonski@madduxattorneys.com

*s/Brian L. Shrader*
Brian Lucas Shrader, Esq.
Florida Bar Number: 57251
Co-Counsel for Plaintiff
902 N. Armenia Ave.
Tampa, FL 33609
Phone: 813-360-1529
Fax: 813-336-0832
E-Mail: bshrader@shraderlawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 11th day of June 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

**MICHAEL P. MADDUX, P.A.**

*s/Jennifer M. Szymczak*
Jennifer M. Szymczak, Esquire